STATE of Tennessee, Appellee,

v.

**Steven Dewayne TRANSOU, Robert James Johnson, James Edward Simmons, Donald Wayne Geanes, and Mitchell W. Williamson, Appellants.**

Court of Criminal Appeals of Tennessee, at Jackson.

March 27, 1996.

---

Joe H. Byrd, Jr., Jackson, for Transou.

Joseph L. Patterson, Jackson, for Johnson.

James D. Gass, Jackson, for Simmons.

G. William Hymers, III, Jackson, for Geanes.

George Morton Googe, District Public Defender, and Daniel J. Taylor, Assistant Public Defender, Jackson, for Williamson.

Charles W. Burson, Attorney General & Reporter, Ellen H. Pollack, Assistant Attorney General, Nashville, James G. Woodall, District Attorney General, Lawrence E. Nicola, Asst. District Attorney General, Jackson, for appellee.

## OPINION

JONES, Judge.

The appellants, Steven Dewayne Transou, Robert James Johnson, James Edward Simmons, Donald Wayne Geanes, and Mitchell W. Williamson, were convicted of possessing more than one-half gram of crack cocaine with intent to sell or deliver, a Class B felony, and possession of drug paraphernalia, a Class A misdemeanor, by a jury of their peers. Williamson was also convicted of possessing marijuana, a Class A misdemeanor. The trial court imposed the following sentences:

a) Transou: A Range II sentence consisting of a $2,000 fine and confinement for fifteen (15) years in the Department of Correction for possessing crack cocaine in excess of one-half gram for sale or delivery, and a fine of $500 and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possession of drug paraphernalia;

b) Johnson: A Range I sentence consisting of a $2,000 fine and confinement for ten

(10) years in the Department of Correction for possessing crack cocaine in excess of one-half gram for sale or delivery, and a fine of $500[1] and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possession of drug paraphernalia;

c) Simmons: A Range II sentence consisting of a $2,000 fine and confinement for twenty (20) years in the Department of Correction, possessing crack cocaine in excess of one-half gram for sale or delivery, and a fine of $500[2] and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possession of drug paraphernalia;

d) Geanes: A Range I sentence consisting of a $2,000 fine and confinement for eight (8) years in the Department of Correction for possessing crack cocaine in excess of one-half gram for sale or delivery, and a fine of $500 and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possession of drug paraphernalia. The trial court ordered that Geanes is to serve six (6) months in confinement with the balance of the sentence served in a community corrections program; and

e) Williamson: A Range I sentence consisting of a $2,000 fine and confinement for nine (9) years in the Department of Correction for possessing crack cocaine in excess of one-half gram for sale or delivery, a fine of $500 and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possessing drug paraphernalia, and a fine of $250 and confinement for eleven months and twenty-nine days in the Madison County Workhouse for possessing marijuana. The trial court ordered that Williamson is to serve eleven months and twenty-nine days in confinement with the balance of the sentence served in a community corrections program.

The trial court ordered that these sentences are to be served concurrently. Simmons, Johnson, and Transou are required to serve these sentences consecutively to prior sentences that were imposed. Simmons is required to serve these sentences consecutively to the sentences he was serving on parole.

Several issues are presented for review by each appellant. Each appellant claims that the evidence is insufficient to support a finding by a rational trier of fact that he is guilty of the offenses beyond a reasonable doubt. Williamson also contends that the trial court committed error of prejudicial dimensions by denying his motion to suppress; and his constitutional rights were violated when the assistant district attorney general commented on his failure to testify in support of his defense.

Williamson's conviction and sentence for possession of marijuana are affirmed. The remaining judgments of the trial court are reversed and the prosecutions against the appellants are dismissed. This Court finds that the evidence is insufficient, as a matter of law, to support a finding by a rational trier of fact that they were guilty of possessing crack cocaine in excess of one-half gram for sale or delivery or possessing drug paraphernalia beyond a reasonable doubt.

During the early morning hours of December 30, 1992, members of the Twenty–Sixth Judicial District Drug Task Force, accompanied by members of the Jackson Police Department's Tactical Unit, executed a search warrant at 425 Mary Lane Courts, an apartment municipally known as 425 South Liberty, Jackson, Tennessee. When the officers announced their presence to serve the search warrant, someone the officers could not identify looked through the blinds. The officers heard the sound of people climbing the stairs to the second floor. When no one answered the door, the officers used a battering ram to literally knock the door from its hinges. The officers subsequently discovered that a two-by-four had been wedged between the bottom step and the door. The other doorway leading into the apartment was not barricaded.[3] The officers candidly admitted that

---

1. These fines were suspended by the trial court.

2. These fines were suspended by the trial court.

3. This was the doorway the confidential informant, who did not testify at trial, used to enter the apartment, purchase crack cocaine, and leave the apartment. This was also the doorway

they did not hear anyone put the two-by-four in place shortly before they entered the apartment.

The officers found Johnson and Simmons in the living room of the apartment. Williamson was found in the hallway at the top of the stairway leading to the second floor bathroom and bedrooms. Transou was found inside the bathroom. He had just flushed the commode. Geanes and a juvenile, Lane P. Boales, who was sixteen years of age, were found in an upstairs bedroom.

An officer found a medicine bottle containing crack cocaine "rocks" on a coffee table in a bedroom.[4] Another officer found two "rocks" of crack cocaine in a flower pot located in the same bedroom. Slivers or granules of crack cocaine were found on a counter in the kitchen. A set of digital scales and a homemade pipe used to smoke crack cocaine were also found in the kitchen. A marijuana cigarette was found in one of Williamson's pockets. The crack cocaine weighed 16.8 grams. It had a street value of $2,400.

The appellants were arrested. A search of Transou's person resulted in the confiscation of two gold rings, a gold bracelet, a watch, a gold chain and pendant, a pager, and $473. A search of Williamson's person resulted in the confiscation of $10, a marijuana cigarette, and papers used to roll marijuana cigarettes. A search of Geanes's person resulted in the confiscation of a gold watch and $46. Nothing of value was found on the person of either Johnson or Simmons.

An officer testified that the apartment was leased to Travoice Fuller, the sister of the juvenile. In the bedroom where the crack cocaine was found, the officers discovered documents containing Fuller's name and a woman's purse. The video tape taken by one of the officers revealed a woman's purse in the living room.

## I.

### A.

■ When an accused challenges the sufficiency of the convicting evidence, this Court must review the record to determine if the evidence adduced at trial is sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R.App.P. 13(e). This rule is applicable to findings based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Dykes,* 803 S.W.2d 250, 253 (Tenn.Crim.App.), *per. app. denied* (Tenn.1990).

■ In determining the sufficiency of the convicting evidence, this Court does not reweigh or reevaluate the evidence. *State v. Matthews,* 805 S.W.2d 776, 779 (Tenn.Crim. App.), *per. app. denied* (Tenn.1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State,* 199 Tenn. 298, 305, 286 S.W.2d 856, 859, *cert. denied,* 352 U.S. 845, 77 S.Ct. 39, 1 L.Ed.2d 49 (1956). To the contrary, this Court is required to afford the State of Tennessee the strongest legitimate view of the evidence contained in the record as well as all reasonable and legitimate inferences which may be drawn from the evidence. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978).

■ Questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, not this Court. *Cabbage,* 571 S.W.2d at 835. In *State v. Grace,* 493 S.W.2d 474, 476 (Tenn.1973), our Supreme Court said: "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State."

mentioned in the search warrant. The officers assigned to the Tactical Unit stated it was their decision to enter through the door where entry was obtained.

The officers could not refute the fact that the two-by-four may have been used to secure the door for reasons other than to prevent the offi-

cers from making entry. The door may have had a faulty locking mechanism.

**4.** Geanes and the juvenile were found in the other bedroom. None of the appellants were found in this bedroom.

Since a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused, as the appellant, has the burden in this Court of illustrating why the evidence is insufficient to support the verdicts returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn.1982). This Court will not disturb a verdict of guilt due to the sufficiency of the evidence unless the facts contained in the record are insufficient, as a matter of law, for a rational trier of fact to find that the accused is guilty beyond a reasonable doubt. *Tuggle*, 639 S.W.2d at 914.

### B.

It has long been established in this jurisdiction that a criminal offense may be established exclusively by circumstantial evidence. *Marable v. State*, 203 Tenn. 440, 451–54, 313 S.W.2d 451, 456–57 (1958); *State v. Hailey*, 658 S.W.2d 547, 552 (Tenn.Crim. App.), *per. app. denied* (Tenn.1983). However, before an accused may be convicted of a criminal offense based exclusively upon circumstantial evidence, the evidence "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant...." *State v. Crawford*, 225 Tenn. 478, 482, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *Crawford*, 225 Tenn. at 484, 470 S.W.2d at 613.

In summary, a conviction for a criminal offense cannot be predicated solely upon conjecture, guess, speculation, or a mere possibility that he or she may be guilty. *Rucker v. State*, 174 Tenn. 569, 573, 129 S.W.2d 208, 210 (1939); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn.Crim.App.1987). Nor is this Court permitted to "speculate upon the guilt of one charged with the commission of a criminal offense." *Clancy v. State*, 521 S.W.2d 780, 781 (Tenn.1975). If an appellate court finds that the circumstantial evidence is insufficient to support a finding by a rational trier of fact that the accused is guilty beyond

a reasonable doubt, it is the duty of the appellate court to reverse the judgment of the trial court and dismiss the prosecution against the accused. *See Cabbage*, 571 S.W.2d at 835–836; *Cooper*, 736 S.W.2d at 128–129; *State v. Gary Lee Brown*, Hamilton County No. 03–C–01–9401–CR–00038, 1995 WL 454744 (Tenn.Crim.App., Knoxville, July 31, 1995).

### C.

Before the appellants could be convicted of the drug offense, the state was required to prove beyond a reasonable doubt that the appellants (a) knowingly possessed crack cocaine, (b) with the intent to sell or deliver, and (c) the amount of the cocaine possessed exceeded one-half gram. Tenn. Code Ann. §§ 39–17–417(a)(4) and (c)(1) (Supp.1995). Before the appellants could be convicted of possessing drug paraphernalia in this case, the state was required to prove beyond a reasonable doubt that the appellants (a) possessed with intent to use, (b) equipment, products or materials, (c) intended for use in weighing and preparing a controlled substance and "ingesting, inhaling, or otherwise introducing" a controlled substance into the human body. Tenn.Code Ann. §§ 39–17–402(12) and –425(a)(1).

The state proved beyond a reasonable doubt that the substance found in the apartment was crack cocaine, and the weight of the cocaine exceeded one-half gram. The state also proved beyond a reasonable doubt that the scales and crack pipe were drug paraphernalia. The question that this Court must resolve is whether the evidence contained in the record, along with all reasonable inferences that can be drawn from this evidence, established that the appellants possessed the crack cocaine and drug paraphernalia beyond a reasonable doubt.

As this Court said in *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn.Crim.App. 1987):

The term "possession," as used in the statute, embraces both actual and constructive possession. *See State v. Williams*, 623 S.W.2d 121, 125 (Tenn.Crim.App.1981); *State v. Copeland*, 677 S.W.2d 471, 476

(Tenn.Crim.App.1984). Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over ... [the drugs] either directly or though others." *State v. Williams*, supra, quoting from *United States v. Craig*, 522 F.2d 29 (6th Cir.1975). See *United States v. Holland*, 445 F.2d 701, 703 (D.C.Cir.1971). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Williams*, supra, quoting from *United States v. Martinez*, 588 F.2d 495 (5th Cir.1979). See *Harris v. Blackburn*, 646 F.2d 904, 906 (5th Cir. 1981). The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn*, 646 F.2d 904, 906 (5th Cir. 1981). See *Dishman v. State*, 460 S.W.2d 855, 858 (Tenn.Crim.App.1970); *Whited v. State*, 483 S.W.2d 594 (Tenn.Crim.App. 1972). Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn*, supra. See *Dishman v. State*, supra; *Whited v. State*, supra.

There is absolutely no evidence, direct or circumstantial, that the appellants possessed the cocaine within the meaning of *Cooper*. First, the officers acknowledged that the appellants did not reside in the apartment. Second, the officers did not find cocaine on the person of the appellants. A marijuana cigarette was found in one of Williamson's pockets. Third, the drugs were discovered in a bedroom which the lessee, Travoice Fuller, apparently occupied. Her identification and personal effects were found in the bedroom where the cocaine was found. There is an inference, rebuttable in nature, that Fuller, as the person in possession of the premises and the one who apparently occupied the bedroom where the cocaine was discovered, owned and possessed the cocaine. *State v. Ash*, 729 S.W.2d 275, 280 (Tenn.Crim.App. 1986), *per. app. denied* (Tenn.1987); *Anderson v. State*, 512 S.W.2d 665, 672–73 (Tenn.Crim.App.1974). This inference was not rebutted during the trial. Fourth, the only person who was under the influence of cocaine was Boales, Fuller's juvenile brother. The crack pipe and small slivers of cocaine were found in the kitchen. It may reasonably be assumed that the slivers of cocaine and the crack pipe were Boales's, and he had used the pipe to inhale the crack cocaine shortly before the officers arrived to execute the search warrant. Fifth, Johnson and Simmons had nothing of value on their person, Geanes had a small amount of currency and a wrist watch, and Williamson had a small amount of cash, the marijuana cigarette, and rolling paper. Transou had a pager, almost five hundred dollars, a gold bracelet, a gold chain with a pendant, and two gold rings. He was in the bathroom when the officers entered the apartment, and he had flushed the commode shortly before he was apprehended by an officer. A person could speculate that Transou had just divested himself of illicit narcotics by flushing the drugs down the commode. A person can also speculate that Transou had a legitimate need to flush the commode since the officers did not find a trace of drugs in the bathroom.

This Court finds that the circumstantial evidence regarding the possession of the cocaine and drug paraphernalia was insufficient, as a matter of law, to convict the appellants of these two possession offenses beyond a reasonable doubt. This evidence does not "exclude every other reasonable hypothesis save the guilt of the [appellants]." *Crawford*, 225 Tenn. at 482, 470 S.W.2d at 612; see *Cooper*, 736 S.W.2d at 128–129. The appellants' mere presence in Fuller's apartment is not, standing alone, sufficient to support a conviction for these offenses. *Cooper*, 736 S.W.2d at 129. Nor is their mere association with Fuller, the person who inferentially was the owner of the cocaine, scales, and crack pipe, sufficient to support their convictions. *Cooper*, 736 S.W.2d at 129; *Dishman v. State*, 3 Tenn.Cr.App. 725, 460 S.W.2d 855, 858, *cert. denied* (Tenn.1970). Therefore, the appellants' convictions for the possession of cocaine in excess of one-half gram and possession of drug paraphernalia are reversed, and the prosecutions against

the appellants for these offenses are dismissed.

## II.

■■■ In addition to the sufficiency of the evidence, Williamson challenges the denial of his motion to suppress and the prosecutor's comment on Williamson's failure to testify. The search warrant used to enter the apartment was constitutionally infirm. The affidavit given in support of the search warrant states:

> Personally appeared before me, Inv. Glenn Penney, who makes oath that he has probable cause for believing and does believe that Steve Transou is/are in possession of the following described property, to-wit: illegal narcotics, tapes, ledgers, pictures, records or any other type of documentation that memorializes drug trafficking or proceeds therefrom[,] contrary to the laws of the State of Tennessee, upon the following described premises to-wit: Merry Lane Courts on South Liberty Street, being the northernmost brick building. The subject[']s apartment will be the second apartment from the east end of the building, located on the north side[,] and his reasons for such belief and the probable cause for such belief are that Affiant has a reliable informant who has proven reliable in the past and has been on said premises within the past 72 hours and has seen illegal narcotics for resale.

As can be seen, the affidavit fails to satisfy the "veracity" prong of *State v. Jacumin,* 778 S.W.2d 430 (Tenn.1989). The affidavit fails to give any facts which establish why the informant was "reliable" or how the informant had "proven reliable in the past." *See, e.g., State v. Valentine,* 911 S.W.2d 328, 330 (Tenn.1995) (statement that informant was a "reputable and reliable person" fails to satisfy the "veracity prong"). As this Court said in *State v. Moon:* "What must be shown in the affidavit are underlying circumstances from which the *magistrate* can conclude that the informant is credible or his information is reliable." 841 S.W.2d 336, 339 (Tenn.Crim. App.1992) (emphasis in original).

The trial court did not determine the constitutionality of the search warrant. Instead, the court found that Williamson did not have a reasonable expectation of privacy in the premises searched. The court also held that the marijuana was found after Williamson was arrested, and the search was incident to the arrest.

■■■ When an accused seeks to suppress evidence seized under color of a search warrant, and the allegations contained in the motion to suppress entitle the accused to an evidentiary hearing, the accused has the burden of proving by a preponderance of the evidence (a) he has a legitimate expectation of privacy in the place or property from which the items sought to be suppressed were seized, *State v. Roberge,* 642 S.W.2d 716, 718 (Tenn.1982); *State v. Burton,* 751 S.W.2d 440, 445 (Tenn.Crim.App.), *per. app. denied* (Tenn.1988); *State v. White,* 635 S.W.2d 396, 399 (Tenn.Crim.App.1982); (b) the identity of the items he seeks to suppress as evidence, *Burton,* 751 S.W.2d at 445; *State v. Johnson,* 705 S.W.2d 681, 683 (Tenn. Crim.App.), *per. app. denied* (Tenn.1985); and (c) the search warrant or the search conducted pursuant to the warrant was constitutionally infirm or did not comport with the mandates of a statute.

The evidence at the suppression hearing identified the specific contraband that Williamson sought to suppress. Furthermore, the constitutional infirmity of the search warrant is apparent on the face of the document. The questions this Court must determine are whether (a) Williamson had a reasonable expectation of privacy in the apartment such that he may challenge the search warrant, and, if not, (b) the search of his person was a valid search incident to arrest, which is an exception to the warrant requirement. *Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969).

### A.

Historically, a person who was "legitimately on [the] premises" at the time a search warrant was executed or who possessed goods and was charged with possessing them had automatic "standing" to challenge the validity of the search and resulting seizure. *Jones v. United States,* 362 U.S. 257, 80 S.Ct.

725, 4 L.Ed.2d 697 (1960). In 1978, the United States Supreme Court rejected the "legitimately on [the] premises" test of *Jones. Rakas v. Illinois,* 439 U.S. 128, 142–43, 99 S.Ct. 421, 429–30, 58 L.Ed.2d 387, 400–01 (1978). The Court said that the "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." 439 U.S. at 143, 99 S.Ct. at 430, 58 L.Ed.2d at 401 (citing *Katz v. United States,* 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)).

The Supreme Court revisited the automatic "standing" rule created in *Jones* in *United States v. Salvucci,* 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). In *Salvucci,* the accused were charged with the possession of stolen mail. The mail was seized during the execution of a search warrant at the apartment of a defendant's mother. The accused invoked the automatic standing rule announced in *Jones.* No effort was made to establish an interest in the property searched. The trial court found that the search warrant was constitutionally infirm, granted the motions to suppress, and dismissed the prosecution. The Court of Appeals affirmed the judgment of the trial court. The U.S. Supreme Court expressly overruled *Jones,* saying "[W]e simply decline to use possession of a seized good as a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." 448 U.S. at 92, 100 S.Ct. at 2553, 65 L.Ed.2d at 628.

The fact that a person is an overnight guest in a residence or an apartment, standing alone, is sufficient to clothe the guest with a legitimate expectation of privacy in the premises sufficient to challenge the search and any resulting seizure. *See Minnesota v. Olson,* 495 U.S. 91, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). However, a "casual visitor" or a "transient party guest" does not have a reasonable expectation in the host's residence or apartment. *See United States v. Dix,* No. 94–4065, 1995 WL 351182 (6th Cir., June 9, 1995) ("As a casual, albeit frequent, visitor to his sister's apartment, who did not keep clothing there, who did not receive mail there, and who had no key, Dix had no reasonable expectation of privacy in the premises."); *United States v. Maddox,* 944 F.2d 1223, 1234 (6th Cir.1991), *cert. denied,* 502 U.S. 950, 112 S.Ct. 400, 116 L.Ed.2d 349 (1991) (guest at a crack house).

In this case, the evidence established that Fuller was the lessee of the apartment. Williamson made no effort to establish a reasonable expectation of privacy in the apartment. He offered no evidence at the suppression hearing. During the trial, Williamson established that he lived at another address. Consequently, Williamson did not have "standing" to challenge the validity of the search warrant.[5] However, because Williamson does have a reasonable expectation of privacy on his person, he can challenge the validity of the seizure of the marijuana cigarette taken from his pocket.

### B.

When the crack cocaine and paraphernalia were found by the officers, the appellants were asked who owned the crack. No one answered. They were also asked whether they leased or had an interest in the apartment. No one answered. The officers then arrested all the appellants. The appellants were searched following their respective arrests. As previously noted, a marijuana cigarette was found in one of Williamson's pockets. He was also charged with possession of marijuana.

A search incident to a valid arrest is an exception to the warrant requirement of the Fourth Amendment to the United States Constitution and Article I, § 7 of the Tennessee Constitution. *See Gustafson v. Florida,* 414 U.S. 260, 94 S.Ct. 488, 38 L.Ed.2d 456 (1973); *United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

When an accused challenges the constitutionality of a search incident to ar-

---

**5.** In fact, none of the appellants challenging the validity of the search warrant established a rea- sonable expectation of privacy in the apartment.

rest, the accused has the initial burden of proving (a) a legitimate expectation of privacy in the area searched, (b) the identity of the property to be suppressed, and (c) the items seized were obtained without a search warrant. When the accused establishes these three prerequisites, the burden shifts to the prosecution to establish the validity of the search incident to arrest. *Burton,* 751 S.W.2d at 445. In this case, Williamson established all three prerequisites through the testimony of the prosecution witnesses. The officers searched his person, the marijuana was clearly identified as the property taken from his person, and his person was searched without a search warrant.

▮ Warrantless searches are presumed to be unreasonable. *See Fuqua v. Armour,* 543 S.W.2d 64, 66 (Tenn.1976); *State v. Shaw,* 603 S.W.2d 741, 742 (Tenn.Crim.App. 1980). Therefore, the state has the burden of establishing by a preponderance of the evidence that the seizure of the marijuana cigarette was justified pursuant to one of the recognized exceptions to the warrant requirement. *Coolidge v. New Hampshire,* 403 U.S. 443, 454–55, 91 S.Ct. 2022, 2032, 29 L.Ed.2d 564, 576 (1971); *State v. Hughes,* 544 S.W.2d 99, 101 (Tenn.1976); *Burton,* 751 S.W.2d at 445–46.

The state established that the search of Williamson's person occurred after a valid arrest. An informant made a controlled buy of crack inside the apartment and told the police that Transou and four black males were selling crack inside the apartment. Williamson was found by the officers in the hallway on the second floor. He was in close proximity to the bedroom where most of the cocaine was found. This constituted sufficient probable cause for his arrest for possessing cocaine in excess of one-half gram. The officers had the right to search Williamson's person as soon he was arrested. The marijuana, which was seized incident to the arrest, was clearly admissible in the prosecution against Williamson.

This issue is without merit.

### III.

▮ Williamson did not testify at trial. During summation, the assistant district attorney general made the following statement in the presence of the jury:

> Mr. Transou was found flushing the toilet. That's what's going on in that apartment. Mr. Williamson tells you, "Not only am I not guilty of that, I'm not guilty of possessing this marijuana cigarette that's in my back pocket. The officers searched and took it off of me and the lab technician came back and said, 'Marijuana. It's marijuana.'" He thinks he's smarter than them. They think they figured it out. They barricaded the door and they got rid of the evidence. They're betting that you won't do it no matter how strong the circumstantial evidence is. They're so cocky, he won't even admit that he had marijuana in his own back pocket.

The trial court found that this was a comment upon Williamson's decision to invoke his privilege against self-incrimination and remain silent during the course of the trial. The trial court gave the following curative instruction:

> Ladies and gentlemen, what the State's Attorney General has said could be taken as an improper comment upon the failure of the defendant Williamson to testify. Mr. Nicola didn't do that on purpose, but out of fear that you may have taken that as being a comment on his failure to testify, it shouldn't have been done. I want to tell you that the defendant Williamson has not taken the stand to testify in this case, but you shall place no significance on this fact. Mr. Williamson is presumed innocent and the burden is on the State to prove his guilt beyond a reasonable doubt, if he is to be found guilty. He is not required to take the stand in his own behalf and his failure to do so cannot be considered for any purpose against him, nor can any inference be drawn from such fact.
>
> So, also, another thing, Mr. Williamson is entitled to plead not guilty, which he has done, without being criticized by the Court or by the State or by anyone else. He is entitled to plead not guilty, which, really, in effect, is a plea that places the burden upon the State to prove his guilt beyond a reasonable doubt. You're not to hold it

against Mr. Williamson because he's pled not guilty. You're not to hold it against Mr. Williamson because he has failed to take the stand. Mr. Nicola did not intend to suggest anything else, but from the way the words came out, you may have taken it as being some type of a criticism of Mr. Williamson for not admitting something. He does not have to admit anything and you're not to hold that against him.

Of course, these are rules of law, obviously, that apply to all of the defendants, naturally, but the reference in this case was to Mr. Williamson, so I'm making reference to him specifically.

So keep that in mind, as I know you will.

 It is constitutionally impermissible for a prosecutor to comment upon an accused's silence during the course of a trial. Such a comment undercuts the accused's privilege against self-incrimination, which is guaranteed by the Fifth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution. *Griffin v. California*, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965); *Ledford v. State*, 568 S.W.2d 113, 116–17 (Tenn.Crim.App.), *per. app. denied* (Tenn.1978). However, this constitutional error may be harmless, *Lyons v. State*, 596 S.W.2d 104, 107 (Tenn.Crim.App. 1979), *per. app. denied* (Tenn.1980), if it can be established that this transgression was harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967).

This Court finds that the comment upon Williamson's failure to testify in support of his defense was harmless beyond a reasonable doubt in the context of this case. The comment was brief, the trial court found that the violation was not intentional, and the trial court gave a detailed curative instruction. Furthermore, the evidence of Williamson's guilt is overwhelming.

This issue is without merit.

SCOTT, P.J., not participating.

PEAY, J., concurs.