IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
July 10, 2001 Session

STATE OF TENNESSEE v. JASON ALLEN MOBLEY and
DEBRA JEAN MOBLEY

Direct Appeal from the Circuit Court for Henry County
No. 12953     Julian P. Guinn, Judge

No. W2000-01884-CCA-R3-CD - Filed September 6, 2001

Following a police search of their home pursuant to a warrant, the defendants, mother and son, were each indicted on one count of possession of marijuana with the intent to manufacture, sell, or deliver, a Class E felony, and one count of possession of drug paraphernalia, a Class A misdemeanor. At the conclusion of their joint trial, the son was found guilty of both counts as charged in the indictment. The jury found the mother guilty of simple possession of marijuana, a Class A misdemeanor, and possession of drug paraphernalia. The trial court denied their motions for new trials, and the defendants filed timely appeals to this court. On appeal, the defendants challenge the sufficiency of the evidence in support of their respective convictions. The State raises the additional issue of whether the defendants may properly be represented by the same appellate counsel when the record is silent concerning whether the trial court addressed the possible conflict created by the joint representation. After a careful review of the record and an analysis of applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Victoria L. DiBonaventura, Paris, Tennessee (on appeal); Jude P. Santana, Camden, Tennessee (at trial) for appellant, Jason Allen Mobley; and Raymond L. Ivey, Huntingdon, Tennessee (at trial) for appellant, Debra Jean Mobley.

Paul G. Summers, Attorney General and Reporter; John H. Bledsoe, Assistant Attorney General; Robert Radford, District Attorney General; and Steven L. Garrett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On May 28, 1999, at about 9 p.m., Henry County sheriff's deputies executed a search warrant at the Mobley home[1] on Highway 641 North in Paris, Tennessee. Among the individuals present when the search was conducted were the defendants, forty-six-year-old Debra Jean Mobley and her nineteen-year-old son, Jason Allen Mobley; Larry Mobley, husband of Ms. Mobley and father of Jason; and Kevin Melton. As a result of the search, the deputies discovered, *inter alia*, 102 grams of marijuana,[2] rolling papers, two rolling machines, a blender containing leaf residue, and a large amount of cash. Jason Mobley, Ms. Mobley, Larry Mobley, and Kevin Melton were arrested and charged with possession of a Schedule VI controlled substance (marijuana) with intent to manufacture, deliver, or sell and possession of drug paraphernalia. Kevin Melton subsequently pled guilty to all charges, and the charges against Larry Mobley were dismissed.

At the joint trial for Ms. Mobley and Jason Mobley, the defendants were represented by separate counsel. Deputy James Edward Forrest testified that he and fellow deputy David Archie were in the first patrol car that arrived at the scene. When they pulled up, six or seven people were outside in the front yard, but "at least two of them," whom he later identified as the defendants, ran into the house when the officers arrived. He followed Ms. Mobley into a bathroom off the master bedroom, while Deputy Archie pursued Jason Mobley into another area of the house. When he reached the bathroom, he saw Ms. Mobley appearing to put something into the shower stall. He said that she was standing beside the shower, with the right side of her body "actually into the shower stall." Kevin Melton was standing beside the toilet, approximately ten to twelve feet from the shower. Inside the shower stall were a tin box with a marijuana cigarette inside, a set of keys, a lighter, and a plastic bag of marijuana.[3] Several "large bags of marijuana" in sealed zip-lock bags were in the toilet. On a night table in the adjoining bedroom was a "rolling machine." A blender with what appeared to be ground up marijuana residue inside was discovered in the living room area of the house.

Deputy William David Archie testified that people "scatter[ed]" when he and Deputy Forrest entered the house. He followed Jason Mobley as he ran through a bedroom and into a closet area, where he was captured. Jason had an open glass of beer in his hand, but no drugs or drug paraphernalia were discovered on his person. However, "residue, seeds, [and] stems of marijuana" were scattered everywhere, and the "strong smell" of smoked marijuana was present throughout the house. On cross-examination, Deputy Archie acknowledged that he had no firsthand knowledge that

---

[1] One witness described the residence as a "flat metal building" with a shop area in the front and living quarters in the rear.

[2] Brian Eaton, a drug chemist with the Tennessee Bureau of Investigation, testified at trial that he tested two separate samples of marijuana, one weighing 6.8 grams, and the other weighing 95.2 grams, for a total weight of 102 grams. A small portion of the marijuana, he said, was used up in the testing process.

[3] Deputy Forrest initially said that he thought that rolling papers had also been discovered in the shower stall. However, no rolling papers were visible in the photograph that had been taken of the items in the shower. Another officer subsequently testified that he had discovered rolling papers on Ms. Mobley's person.

Jason Mobley lived at the residence. He admitted that Jason had been within his sight from the moment he first saw him, standing in the doorway of the house, until he was captured in the closet of the bedroom. Jason had not gone into the master bathroom.

Investigator Scott Lynn Wyrick testified that he obtained the search warrant based on a tip from a confidential informant that marijuana was being sold from the residence. Upon his arrival, he saw several people around the front door of the building, including Ms. Mobley, "hurrying into the shop area." A strong smell of burning marijuana could be detected from several feet outside the residence. Inside, in the master bathroom toilet, he found a large plastic bag containing four sandwich-size bags of marijuana in approximately one ounce increments.[4] Jason Mobley's wallet, containing $350, was on the back of the toilet tank. Another small plastic bag of marijuana and a tin box containing one-half of a smoked marijuana cigarette were found in the shower. He searched Ms. Mobley and found rolling papers in her right rear pocket. He also found a small bag of marijuana and some marijuana plant stems inside a recreational vehicle located in the shop area of the residence. Kevin Melton was found with $3507.00 in cash and a small bag of marijuana on his person. Investigator Wyrick testified that to his knowledge, and based on information provided by the informant, Jason Mobley lived at the residence with his parents.

Kevin Melton and Larry Mobley testified for the defendants. Melton claimed that the marijuana discovered in the master bathroom had belonged solely to him. He said that he had been outside the Mobley home with "about four ounces of marijuana" in four separate zip-lock bags inside a larger zip-lock bag "down [his] pants," when he saw the patrol cars pull up. He ran inside to the master bathroom and shoved the bag into the commode. When he was arrested, he had $3500 in cash and another small bag of marijuana in his pocket. He pled guilty to possession of marijuana with the intent to manufacture, deliver, or sell and possession of drug paraphernalia. On cross-examination, Melton testified that the Mobley home was the residence of Larry, Debra, and Jason Mobley. He admitted that he had used a coffee blender at the Mobleys to grind up some of his marijuana, but said that neither Larry nor Debra Mobley were home at the time. He could not explain where he had gotten the marijuana that he threw into the toilet, other than to say that he "just had it."

Larry Mobley testified that he and his wife had gone out to dinner on the evening of May 28, 1999, and had been home only ten or fifteen minutes when the police arrived to execute the search warrant. He claimed that he had not smelled marijuana, and had no knowledge of any contraband in the house. He explained the rolling machines and cigarette papers as items he used to hand roll tobacco.

After deliberating, the jury convicted Jason Mobley of one count of possession of marijuana with the intent to manufacture, deliver, or sell and one count of possession of drug paraphernalia.

---

[4]Wyrick testified that the street name for the individual sandwich bags of marijuana is "OZ" bags. He estimated the current street value in Henry County for one ounce of marijuana at "[s]omewhere between and [sic] hundred and a hundred and sixty dollars."

Ms. Mobley was convicted of one count of possession of drug paraphernalia and one count of simple possession of marijuana. Jason Mobley was sentenced as a Range I, standard offender to two years imprisonment on the possession of marijuana with intent to manufacture, deliver, or sell conviction, and 11 months, 29 days on the possession of drug paraphernalia conviction, with the sentences to run concurrently. He was assessed fines totaling $7500. Ms. Mobley was sentenced on both counts to 11 months, 29 days, to be served concurrently, with 180 days confinement, and the remainder on supervised probation. She was assessed fines totaling $5000. Following the denial of their motions for a new trial, both defendants filed timely appeals to this court.

## ANALYSIS

### I. Joint Representation on Appeal

The State raises the issue of whether the defendants may appropriately be represented on appeal by the same appellate counsel, when the record is silent concerning whether the provisions of Tennessee Rule of Criminal Procedure 44 (c) were followed. The State argues that in the absence of evidence that the trial court inquired into the possible conflict created by the joint representation, and that the defendants knowingly elected to proceed with the same appellate counsel, the case should be remanded to the trial court for a determination of the issue of joint representation.

Rule 44 of the Rules of Criminal Procedure involves a criminal defendant's right to and assignment of counsel. Subsection (c) provides:

> (c) Joint Representation.–Whenever two or more defendants have been jointly charged pursuant to Rule 8(b) or have been joined for trial pursuant to Rule 13, and are represented by the same retained or assigned counsel or by retained or assigned counsel who are associated in the practice of law, the court shall promptly inquire with respect to such joint representation and shall personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless it appears that there is good cause to believe no conflict is likely to arise, the court shall take such measures as may be appropriate to protect each defendant's right to counsel.

Subsection (c) was added in 1984 in order to conform Rule 44 to the similar federal rule. See Tenn. R. Crim. P. 44, Advisory Commission Cmts. The comments to Rule 44 of the federal rule state that "Rule 44(c) establishes a procedure for avoiding the occurrence of events which might otherwise give rise to a plausible post-conviction claim that because of joint representation the defendants in a criminal case were deprived of their Sixth Amendment right to the effective assistance of counsel." Fed. R. Crim. P. 44(c), Advisory Committee Cmts., 1979 Amendment. Regarding Tennessee Rule of Criminal Procedure 44(c), this court has observed that it was "designed to protect defendants from detrimental joint representation and to protect the judicial process from needless multiple trials after

-4-

a conviction and the revelation of conflicts of interest." State v. Freida Kilburn Hayes, No. 3, Obion County, 1988 WL 119335, at *5 (Tenn. Crim. App. Nov. 9, 1988).

The defendants in this case were represented by separate counsel at trial and in their motions for new trial. On March 22, 2000, present appellate counsel was entered as the attorney of record for Ms. Mobley for the purpose of her motion for a new trial, replacing her trial counsel. Jason Mobley's trial counsel continued his representation of Jason through his motion for a new trial; thereafter, on July 28, 2000, present appellate counsel filed a notice of her representation of Jason Mobley for appeal purposes.

The record is silent regarding whether the trial court specifically inquired into appellate counsel's joint representation of the defendants on appeal. We find it unnecessary, however, to remand the case to the trial court for a determination of the issue. The State has pointed to no conflict of interest, either potential or actual, created by appellate counsel's joint representation, and no conflict is apparent from the record. "The mere fact of joint representation will not, in and of itself, be sufficient to show an actual conflict, nor will hypothesis or speculation." State v. Parrott, 919 S.W.2d 60, 61 (Tenn. Crim. App. 1995) (citing United States v. Medel, 592 F.2d 1305, 1312 (5th Cir. 1979)). The trial transcript reveals that each defendant utilized similar trial strategies, with both attempting to cast total blame for the marijuana and drug paraphernalia found in the house on Kevin Melton, rather than on each other. Nothing in the facts presented by this case prohibited appellate counsel from undertaking zealous representation of both defendants. See State v. Danny Barnhill, No. 86-264-III, Hickman County, 1988 WL 10080, at *1 (Tenn. Crim. App. Feb. 9, 1988) (finding that trial court's failure to literally comply with the mandates of Rule 44(c) was harmless beyond a reasonable doubt in light of clear evidence that no conflict of interest was present or developed during trial). Further, in the absence of evidence of an actual or potential conflict created by appellate counsel's joint representation, there is no need to remand the case for the defendants to appear in open court and personally waive their right to conflict-free representation. Cf. Shannon L. Smith v. State, No. 02C01-9508-CR-00241, 1997 WL 658993, at *5 (Tenn. Crim. App. Oct. 23, 1997) (calling for post-conviction courts, when faced with joint representation that may create an actual or potential conflict of interest, to follow guidelines established by Rule 44 (c) for defendants' waiver of the right to conflict-free representation). In sum, we conclude that no actual or potential conflict was created by appellate counsel's joint representation of the defendants on appeal, and that nothing, therefore, prohibits us from considering the sufficiency of the evidence issues raised by the defendants on appeal.

## II. Sufficiency of the Evidence

Both defendants challenge the sufficiency of the evidence in support of their respective convictions. When the sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the offense charged beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). See also State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson,

835 S.W.2d 600, 604 (Tenn. Crim. App. 1992); Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."). This rule is applicable to findings of guilt based on circumstantial, as well as direct, evidence. See State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978); State v. Hatchett, 560 S.W.2d 627, 630 (Tenn. 1978). Neither does this court substitute its inferences for those of the trier of fact in circumstantial evidence cases. Liakas v. State, 286 S.W.2d 856, 859 (Tenn. 1956); Farmer v. State, 574 S.W.2d 49, 51 (Tenn. Crim. App. 1978). To the contrary, we are required to give the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences that can be drawn from it in support of the convictions. Cabbage, 571 S.W.2d at 835.

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Both defendants assert that the evidence against them was entirely circumstantial, based solely on their presence in the home where drugs were found and the fact that they ran at sight of the officers. They contend that the evidence against them was not strong enough to exclude every reasonable hypothesis other than their guilt of the crimes, and thus, that it was insufficient, as a matter of law, to support their convictions. Jason Mobley argues that the State did not exclude the possibility that he was at the home only to visit his parents, and that he ran at sight of the police because he was underage and drinking beer. Ms. Mobley argues that she was present at the home because she lived there, and that she ran because "everyone else ran."

Circumstantial evidence alone may be sufficient to support a conviction. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996) (citing Marable v. State, 313 S.W.2d 451, 456-57 (Tenn. 1958) and State v. Hailey, 658 S.W.2d 547, 552 (Tenn. Crim. App. 1983)); State v. Buttrey, 756 S.W.2d 718, 721 (Tenn. Crim. App. 1988). However, if the evidence against a defendant is solely circumstantial, it "'must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant . . . .'" Transou, 928 S.W.2d at 955 (quoting State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971)). Questions concerning the weight to be given circumstantial evidence and the inferences to be drawn from it are, as stated previously, reserved for the jury, as the trier of fact. See Brown, 551 S.W.2d at 331; Farmer, 343 S.W.2d at 897. "If an appellate court finds that the circumstantial evidence is insufficient to support a finding by a rational trier of fact that the accused is guilty beyond a reasonable doubt, it is the duty of the appellate court

to reverse the judgment of the trial court and dismiss the prosecution against the accused." Transou, 928 S.W.2d at 955 (citations omitted).

In order to prove Jason Mobley guilty of possession of marijuana with the intent to manufacture, deliver, or sell, the State had to show beyond a reasonable doubt that he knowingly possessed one-half ounce to ten pounds of marijuana with the intent to manufacture, deliver, or sell it. See Tenn. Code Ann. § 39-17-417(a)(4)(g)(1) (Supp. 1998). To prove Debra Mobley guilty of simple possession, the State had to show beyond a reasonable doubt that she knowingly possessed marijuana. See Tenn. Code Ann. § 39-17-418(a) (1997). To prove both defendants guilty of the possession of drug paraphernalia, the State had to show beyond a reasonable doubt that they used or possessed with intent to use "equipment, products and materials," see Tenn. Code Ann. § 39-17-402(12), to "plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance[.]" Tenn. Code Ann. § 39-17-425(a)(1) (1997). Viewing the evidence in the light most favorable to the State, as we must, we conclude that the evidence was sufficient for a rational trier of fact to find the defendants guilty of these offenses beyond a reasonable doubt.

As an initial matter, we note that the possession of drugs and drug paraphernalia may be constructive, as well as actual. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001) (citations omitted); Transou, 928 S.W.2d at 955-56; State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). An individual's mere presence in an area in which drugs are found, or association with another individual in possession of drugs, is not, alone, sufficient to establish constructive possession. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997), and Cooper, 736 S.W.2d at 129). However, possession of the premises in which contraband is found creates an inference that the possessor had possession of the contraband. See Transou, 928 S.W.2d at 956; Armstrong v. State, 548 S.W.2d 334, 336 (Tenn. Crim. App. 1976).

## A. Debra Mobley

In our view, the evidence in this case was legally sufficient to support Ms. Mobley's convictions for simple possession of marijuana and possession of drug paraphernalia. It was undisputed that the house upon which the search warrant was executed was Ms. Mobley's home. Upon their arrival, sheriff's deputies observed Ms. Mobley running from the yard to the inside of the house. Deputy Forrest followed her into the master bathroom, where he caught her with her body partially inside the shower stall, in the apparent act of placing something onto the shower floor. Among other items discovered inside the shower into which Ms. Mobley was reaching were a small plastic bag of marijuana and one-half of a smoked marijuana cigarette. When she was searched, rolling papers were discovered in her right rear pocket. Although Larry Mobley testified that the

rolling papers and rolling machines in the house were ones he used to hand roll tobacco, the jury could have reasonably concluded, in light of the other evidence in the case, that these items were used to roll marijuana cigarettes. The evidence was more than sufficient for a rational trier of fact to find Ms. Mobley guilty beyond a reasonable doubt of simple possession of marijuana and possession of drug paraphernalia.

### B. Jason Mobley

We also conclude that the evidence was sufficient to convict Jason Mobley of possession of marijuana with the intent to manufacture, deliver, or sell, and possession of drug paraphernalia. Although no marijuana or drug paraphernalia was discovered on his person, according to the testimony of both Kevin Melton and Scott Wyrick, Jason Mobley resided at the home with his parents. Investigator Wyrick testified that he had been familiar with Jason Mobley prior to the date of the search, and that he knew him to live at the home. He additionally testified that information provided by the police informant indicated that as recently as the night that the search warrant was issued, Jason lived at the home with his parents.

Furthermore, although Kevin Melton testified at trial that the marijuana in the home belonged solely to him, Investigator Wyrick testified that the confidential informant told him that he had seen both Kevin Melton and Jason Mobley in possession of marijuana at the residence. Possession may occur either alone, or jointly with others. See Copeland, 677 S.W.2d at 476. Here, the jury was presented with evidence that Jason Mobley resided at the home in which drug paraphernalia and large amounts of marijuana, packaged in one ounce, "retail" size bags, were found. The jury was also presented with testimony that a confidential informant had seen Jason Mobley and Kevin Melton together in possession of marijuana at the residence, and had reported that marijuana was being sold from the home. Additionally, the jury heard that Jason Mobley fled at sight of the officers. A reasonable trier of fact could have concluded that Jason Mobley fled not because he was drinking a beer underage on the front porch of his home, but rather because he was a joint owner of the large amount of marijuana and drug paraphernalia in the residence. The evidence presented was sufficient for a rational trier of fact to find Jason Mobley guilty beyond a reasonable doubt of possession of marijuana with the intent to manufacture, deliver, or sell and possession of drug paraphernalia.

### CONCLUSION

We conclude that the defendants' representation by the same appellate counsel does not create a conflict of interest. We further conclude that the evidence in the case was sufficient to support the defendants' convictions beyond a reasonable doubt.

_____
ALAN E. GLENN, JUDGE