IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 7, 2006

## STATE OF TENNESSEE v. CHARLES EDWARD WILKERSON

**Direct Appeal from the Circuit Court for Fayette County**
**No. 5569      J. Weber McCraw, Judge**

---

**No. W2005-01750-CCA-R3-CD  - Filed April 18, 2006**

---

The appellant, Charles Edward Wilkerson, was charged in a three count indictment with possession of .5 grams or more of cocaine with the intent to deliver, evading arrest, and possession of drug paraphernalia.  Prior to trial, the appellant pled guilty to evading arrest and possession of drug paraphernalia.  After a jury trial, the appellant was found guilty of criminal responsibility for the facilitation of the possession of .5 grams or more of cocaine with the intent to deliver, a Class C felony.  The appellant received a total effective sentence of three years in the Tennessee Department of Correction.  On appeal, the appellant challenges the sufficiency of the evidence supporting his facilitation conviction.  After a review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and JOSEPH M. TIPTON, J., joined.

Shana Johnson, Somerville, Tennessee, for the appellant, Charles Edward Wilkerson.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Terry Dycus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, the State's proof revealed that on June 4, 2004, Terry Dale Walker, a deputy with the Fayette County Sheriff's Department, was parked at Merle's Grocery on Feather's Chapel Road. Deputy Walker was running stationary radar, watching for speeding motorists.  At 7:09 p.m., a vehicle driven by Jimmy Dewayne Cleaves passed Deputy Walker.  The vehicle was traveling at sixty-two miles per hour in a forty-five miles per hour zone.  Deputy Walker pursued Cleaves,

activating the lights and siren on his police cruiser. Despite having the opportunity to do so, Cleaves did not pull over immediately. During the pursuit, Deputy Walker saw Cleaves and the appellant, who was sitting in the front passenger seat of the vehicle, moving around in their seats.

After approximately half a mile, Cleaves parked his vehicle at the entrance to a field. Deputy Walker parked behind Cleaves' vehicle. Before Deputy Walker could exit his police cruiser, Cleaves got out of his vehicle and began walking toward the police cruiser. Deputy Walker repeatedly told Cleaves to return to his vehicle. Cleaves walked back toward his vehicle and stood beside the back driver's side door. He asked Deputy Walker why he had been stopped. Deputy Walker replied that he had stopped Cleaves for speeding. Deputy Walker walked toward Cleaves' vehicle and noticed the appellant bending over and "doing a lot of moving around in the car." Deputy Walker walked to the passenger side door and saw that the appellant had placed between his feet a brown paper bag containing what appeared to be a quart of beer. Deputy Walker did not notice any items on the ground near the passenger door.

Deputy Walker told the appellant that having the beer was not a problem, and Cleaves got into the driver's seat of his vehicle with the door open and his feet on the ground. The appellant tried to get out of the vehicle, but Deputy Walker pushed the passenger door closed and told the appellant to stay in the vehicle. Deputy Walker again explained that he had stopped Cleaves for speeding. Cleaves confessed to Deputy Walker that he was driving without a license. Deputy Walker obtained Cleaves' name and date of birth for an information check.

While running the information check, Deputy Walker called for backup. Shortly thereafter, Deputy Clifford Atkins arrived on the scene. Together, the deputies got Cleaves out of his vehicle. The deputies were patting Cleaves down when Deputy Jack Norris McCulley arrived. During the pat-down, Deputy Atkins felt something in the pocket of Cleaves' pants. Cleaves told the deputy that what he felt was $1500 in cash that Cleaves had made doing odd jobs and construction. Cleaves was nervous and jittery during the pat-down. Deputy Walker stood beside Cleaves because he believed that Cleaves was going to run away.

Deputy McCulley took the appellant to the rear of the vehicle to speak with him. The appellant was searched at the rear of the vehicle. The search revealed that the appellant possessed minimal cash, rolling papers, and a set of dice.

Deputy Atkins walked to the passenger side of the vehicle. Deputy Atkins saw a cold beer bottle on the ground beside the passenger door of the vehicle. Beside the beer bottle, he saw a bag containing what appeared to be crack cocaine. Deputy Atkins picked up the bag and said, "What's this?" Cleaves bolted, running west on Feather's Chapel Road. Deputies Walker and Atkins pursued him on foot. As he was chasing Cleaves, Deputy Walker saw Cleaves spit a plastic bag from his mouth. Deputy Walker picked up the bag and continued running.

Immediately after Cleaves began running, Deputy McCulley attempted to handcuff the appellant. The appellant broke free and ran east on Feather's Chapel Road. Deputy McCulley chased him on foot. The deputies were unable to apprehend Cleaves or the appellant.

The deputies returned to Cleaves' vehicle and arranged for it to be impounded. The deputies searched the inside of the vehicle, but they found no contraband. However, Deputy Atkins discovered a set of digital scales beside the beer bottle, near where he had discovered the crack cocaine. The bag that Deputy Walker saw Cleaves abandon contained a substance that appeared to be powder cocaine. Two days later, Cleaves and the appellant turned themselves in at the police station.

The bags and their contents were sent to the Tennessee Bureau of Investigation (TBI) crime laboratory for testing. Jessica Lynn Webb, a TBI forensic scientist, testified that the bags contained 8.2 grams of powder cocaine and 5.1 grams of crack cocaine.

The appellant testified that he had been riding around with Cleaves to test a motor that Cleaves had just installed in his vehicle. They were pulled over for speeding. The appellant admitted that he had an open container of beer in the vehicle, but he denied knowing that there were drugs in the vehicle. The appellant acknowledged that he had eight or ten dollars, rolling papers, and a set of dice with him at the time of the stop. The appellant stated that he occasionally "shoots dice." He stated that people sometimes buy or use drugs at dice games. The appellant conceded that digital scales are used to weigh drugs for exchange, sale, or delivery. The appellant maintained that he did not know the price of cocaine, but he had "heard of twenties and tens." He acknowledged that small amounts of crack cocaine are often sold by breaking small pieces from a large rock. The appellant denied any involvement with the cocaine police discovered.

The appellant was convicted of criminal responsibility for the facilitation of possession of .5 grams or more of cocaine with the intent to deliver, and he was sentenced to three years for that offense.[1] On appeal, the appellant contends that there was insufficient evidence to support his facilitation conviction.

## II. Analysis

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

---

[1] The appellant raised no issues regarding his guilty pleas to the charges of evading arrest and possession of drug paraphernalia.

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Additionally, we note that a guilty verdict can be based upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. See State v. Dykes, 803 S.W.2d 250, 253 (Tenn. Crim. App. 1990), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000). However, although a guilty verdict may result from purely circumstantial evidence, in order to sustain the conviction the facts and circumstances of the offense "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the [appellant]." State v. Crawford, 470 S.W.2d 610, 612 (Tenn. 1971).

Tennessee Code Annotated section 39-11-403(a) (2003) provides that "[a] person is criminally responsible for the facilitation of a felony if, knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony." Tennessee Code Annotated section 39-17-417(a)(4) (2003) provides that it is an offense to knowingly possess .5 grams or more of cocaine with the intent to deliver. See also Tenn. Code Ann. § 39-17-417(c)(1). Possession of an object can be either actual or constructive. See State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996). To establish constructive possession, it must be shown that the person accused had the power and intention at a given time to exercise dominion and control over the object directly or through others. See State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In other words, "'constructive possession is the ability to reduce an object to actual possession.'" Id. (quoting State v. Williams, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981)).

We begin by noting that TBI testing revealed that the deputies found 8.2 grams of powder cocaine and 5.1 grams of crack cocaine, for a total of 13.3 grams of cocaine. Deputy Walker saw Cleaves spit out the bag containing the powder cocaine, and the crack cocaine was found next to Cleaves' vehicle near a cold beer bottle the appellant had been holding only moments before. The crack cocaine had not been there when Detective Walker first approached the passenger side of the vehicle. Accordingly, we conclude that the drugs were in the possession of Cleaves and the appellant. See State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001).

Further, Cleaves had a large amount of cash, $1500, in his possession at the same time he possessed 13.3 grams of cocaine. Additionally, a digital scale, commonly used to measure drugs for sale, exchange, or delivery, was found outside the passenger door of the vehicle, lying next to a beer that the appellant was seen holding. The appellant possessed a set of dice, and he acknowledged that he engaged in dice games. The appellant admitted that drugs are sometimes sold or consumed at dice games. Tennessee Code Annotated section 39-17-419 (2003) provides, "It may be inferred from the amount of a controlled substance . . . , along with other relevant facts surrounding the arrest, that

the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

Finally, we must determine whether the appellant was facilitating Cleaves' possession with intent to distribute the cocaine. When Deputy Walker activated his lights and siren, indicating that Cleaves should pull over, Cleaves continued to drive for half a mile. Cleaves and the appellant repeatedly moved around in the front seat of the vehicle. After Cleaves stopped, he attempted to meet the deputy at the police cruiser. Upon approaching Cleaves' vehicle, Deputy Walker saw the appellant moving something in the vehicle. Deputy Walker believed that the object was a bottle of beer in a brown bag. Deputy Atkins found the crack cocaine beside the passenger door of the vehicle, lying next to a cold bottle of beer. The appellant had been sitting on the passenger side. Cleaves ran from the scene after Deputy Atkins found the cocaine, and the appellant ran shortly thereafter. After a search of the premises surrounding the vehicle, Deputy Atkins found digital scales beside the beer bottle. Thus, a reasonable jury could infer that the appellant knew that Cleaves possessed the cocaine with the intent to deliver, and he attempted to furnish substantial assistance by hiding the cocaine. See State v. Algernon Cross, No. M2004-01930-CCA-R3-CD, 2005 WL 1252631, at *7 (Tenn. Crim. App. at Nashville, May 25, 2005), perm. to appeal denied, (Tenn. 2005). We conclude that there was sufficient proof at trial to sustain the appellant's conviction.

### III.  Conclusion

Finding no error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE