IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs November 26, 2002

## STATE OF TENNESSEE v. TIM D. GARDNER

**Direct Appeal from the Circuit Court for Robertson County**
**No. 00-0183     Michael R. Jones, Judge**

---

**No. M2001-01436-CCA-R3-CD - Filed February 20, 2003**

---

A Robertson County jury convicted the Appellant, Tim D. Gardner, of possession of over 300 grams of cocaine, with intent to sell, a class A felony. Gardner raises one issue for our review: whether the evidence was sufficient to support his conviction. After review, we conclude that the proof is sufficient. Accordingly, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which JERRY L. SMITH and NORMA MCGEE OGLE, JJ., joined.

Michael A. Colavecchio, Nashville, Tennessee, for the Appellant.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Jennifer L. Bledsoe, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Dent Morriss, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

During the summer of 1999, Darryl Terez Smith was the target of a joint undercover drug investigation by the Metropolitan Nashville and Springfield Police Departments. During the investigation, Smith engaged in drug sales to confidential informants in both Davidson and Robertson counties. On July 26, 1999, a Metro undercover officer met Smith at his apartment in Springfield and ordered a quarter kilogram of cocaine for $6,500. Smith, along with another unidentified individual, proceeded to the address of 202 10th Avenue in Springfield. The building at this address was "a twenty by ten foot concrete shed" and had only one door. Metro Detective Jessie Birchwell in describing the building as a typical crack-house explained:

[T]here's a window and it is boarded up, but actually inside of the window, it has a cut open a piece with a slide that slides up and down and it is typical of what you see in crack houses, that way you don't have to actually enter the building. They just slide it open and put the money inside and slide the crack cocaine outside. That way you never have to actually go inside the building.

Upon arriving at the building, Smith and the other individual went inside for approximately two to three minutes. Both men exited, with Smith carrying a small rectangular box, and they then returned to Smith's apartment. A search warrant was later executed at Smith's apartment, and the quarter kilo of cocaine was found in the box.

The officers returned to the building at 202 10th Avenue, approximately ten to fifteen minutes after leaving that location to follow Smith back to his apartment. Upon arriving at the building, the officers loudly knocked on the door and announced their presence; no response was received. Detective Birchwell left after a couple of minutes in order to obtain a search warrant for the building. Sergeant Rob Forest was left at the location by himself. About an hour after the police returned to the scene, the door suddenly opened, and the Appellant and another individual ran out. The Appellant was captured and handcuffed, but the other individual escaped. Detective Birchwell again arrived at the scene. Officer Forest testified that the following events then transpired:

Q. Did you notice anything unusual inside the shed once the door was open?

A. Yes, sir, the commode was running over, the water was running out on the floor.

Q. Did you and Officer or Detective Birchwell do anything regarding that?

A. Yes, sir, it looked like the bottom of the commode was stopped up with what looked like cocaine, rock cocaine. I scooped my hand down into the water and retrieved as much as I could reach out of the commode.

Q. And ultimately, did you take the commode outside?

A. Yes, sir, we had to take it outside and actually break the commode apart because in one of the chambers where the water goes through to down into the sewer, it was clogged full of cocaine, or what looked like cocaine to me.

Q. Now, based on your observations, Sergeant, was that commode overflowing at the time that the two individuals ran out the door?

A. Yes, sir. It was very hot in there also. Mr. Gardner was wringing wet with sweat and I don't think they had any air conditioner.

The substance discovered in the toilet was later determined to be 381 grams of cocaine, which had an estimated street value of "a little over three hundred thousand dollars."

On April 26, 2000, a Robertson County grand jury returned a two-count indictment against the Appellant charging possession with intent to sell over 300 grams of cocaine, Count 1, and, in the alternative, possession with intent to deliver over 300 grams of cocaine, Count 2. After a trial by jury, the Appellant was found guilty as charged in Count 1. Following a sentencing hearing, the Appellant received a sentence of seventeen years.

## ANALYSIS

The Appellant argues that there was insufficient evidence that he possessed the drugs found inside the building. Rather, he submits that he was given permission by the owner of the car wash located next to the building to enter the building because "he was feeling sick" after washing his car. At the time, the Appellant was taking numerous medications and undergoing dialysis in preparation for a kidney transplant.[1] He asserts that he fell asleep and, when he awoke, an unknown man was in the bathroom. The Appellant testified he was unable to identify the person because "all I seen was the back of his head . . . [and] I didn't see his face." He also testified that, as he walked out of the building, he was apprehended by a police officer. He denied any knowledge of the presence of cocaine in the building.

A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, the Appellant must establish that the evidence presented at trial was so deficient that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994). Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). As in the case of direct evidence, the weight to be given circumstantial evidence and "the inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *Marable v. State*, 313 S.W.2d 451, 457 (Tenn. 1958) (citation omitted).

---

[1]The Appellant received a kidney transplant eight days after his arrest in this case.

There is no dispute as to the nature of the substance found in the residence. The only issue is whether the Appellant was in possession of the cocaine. A conviction of possession of drugs may be based upon either actual or constructive possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). In discussing the nature of constructive possession in a similar context, this court has stated that before a person can be found to constructively possess drugs, it must appear that the person has "the power and intention at a given time to exercise dominion and control over the drugs either directly or through others." *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (citations omitted). Mere presence in an area where the drugs are discovered is not, standing alone, sufficient to support a conviction for possession. *Id.*

To convict in this case, the State was required to prove that the Appellant knowingly possessed cocaine in excess of 300 grams with the intent to sell. Tenn. Code Ann. § 39-17-417(a) (Supp. 2002). The element of knowledge of the presence of a controlled substance for purposes of unlawful possession is oftentimes not susceptible of direct proof. This is particularly true in cases involving the presence of drugs in so-called crack houses, which are typically sparsely furnished, uninhabited dwellings or buildings, with little or no connection to any person. Nonetheless, knowledge of the presence of illegal drugs may be circumstantially proved by evidence of acts, statements, or conduct, which would allow an inference that a defendant was in control of the premises and was aware of the presence of drugs on the premises. *Transou*, 928 S.W.2d 949 at 956. After examination of the entire record, we conclude that the proof is sufficient for a rational jury to find that the Appellant was more than simply an innocent visitor to the shed, which contained $300,000 of cocaine.

First, with respect to the Appellant's presence in the shed, he explained that he was there because he was sick. Officers testified that the building was not air conditioned and, on July 26th, it was 98 degrees outside and even hotter inside the building. As one officer stated, "It was stifling hot" inside. After the police announced their presence by pounding on the door, the Appellant made no response and remained inside for approximately one hour. Second, inside the "twenty by ten foot concrete shed" were boxes of Ziplock baggies and a large beaker with white residue next to a microwave oven, in addition to the $300,000 of cocaine eventually placed in the commode. Immediately prior to this occurrence, the building had been the depository for an additional one quarter kilo of cocaine sold by Smith. From these facts, a jury could logically infer that a casual visitor would not be allowed access to the building. Third, the Appellant admitted that he was the sole occupant of the building until the unidentified person appeared on the scene. Finally, the Appellant's flight from the building coincided with water flowing onto the floor from the commode, following a failed attempt to flush the cocaine. After reviewing the evidence in the light most favorable to the State, we conclude the proof, together with all reasonable inferences, was sufficient to establish that the Appellant knowingly possessed cocaine.

**CONCLUSION**

For the foregoing reasons, we conclude that the evidence was sufficient to support the Appellant's conviction for possession of over 300 grams of cocaine with intent to sell. Accordingly, the judgment of the Robertson County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE