IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs September 21, 2005

## STATE OF TENNESSEE v. LARRY BALLENTINE

**Direct Appeal from the Circuit Court for Wayne County**
**No. 13255     Jim T. Hamilton, Judge**

---

**No. M2004-02175-CCA-R3-CD - Filed January 31, 2006**

---

The appellant, Larry Ballentine,[1] was convicted by a jury in the Wayne County Circuit Court of possession of a Schedule III controlled substance with the intent to sell. He received a sentence of six years incarceration in the Tennessee Department of Correction. On appeal, the appellant contests the sufficiency of the evidence supporting his conviction and the trial court's evidentiary rulings on impeachment evidence. Upon our review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which DAVID H. WELLES and J.C. MCLIN, JJ., joined.

Robert H. Stovall, Jr., Columbia, Tennessee, for the appellant, Larry Ballentine.

Paul G. Summers, Attorney General and Reporter; Brent C. Cherry, Assistant Attorney General; Mike Bottoms, District Attorney General; and Doug Dicus, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

At trial, Agent William Toungette testified that in July 2003, he was working with the 22nd Judicial District Drug Task Force as an investigator. Agent Toungette was working undercover, making purchases of illegal narcotics. During the course of his undercover work, Agent Toungette became acquainted with George Pulley. Pulley, not knowing that Agent Toungette was a law enforcement officer, made several purchases of illegal prescription narcotics for Agent Toungette.

---

[1] The appellant's surname is also spelled in the record as "Balentine." However, we will use the spelling contained in the indictment.

At approximately 9:00 or 10:00 a.m. on July 24, 2003, Agent Toungette and an unnamed part-time agent went to Pulley's residence to obtain drugs. Pulley informed the agents that he did not have any pills to sell them but that he knew where the agents could obtain the desired drugs. Pulley got into the back seat of Agent Toungette's vehicle and directed Agent Toungette to the appellant's mobile home. They arrived at the location at approximately 12:00 or 1:00 p.m.

The agents gave Pulley money with which to purchase drugs. Agent Toungette could not remember the precise amount of money he gave Pulley, but he recalled that it was less than fifty dollars. Agent Toungette specifically requested that Pulley purchase mainly Lortab pills or hydrocodone pills. Pulley, who was holding a beer, walked up to the mobile home while the agents waited in the vehicle. Fifteen to twenty minutes later, Pulley emerged from the appellant's mobile home and came back to the agents' vehicle. Pulley got into the vehicle and handed Agent Toungette a total of eight pills, three Lortab pills and five Soma pills. The appellant came onto the porch of his mobile home to inform Pulley that he had left his beer in the residence. Pulley retrieved his beer, and he and the agents departed from the location.

Agent Toungette sent the pills purchased by Pulley to the Tennessee Bureau of Investigation (TBI) crime laboratory for testing. The three Lortab pills contained dihydrocodinone, a Schedule III controlled substance. The remaining five pills, purported to be Soma, did not contain a scheduled controlled substance.

George Gilbert Pulley testified at trial that during the month of July 2003, he made purchases of pills for Agent Toungette. Pulley did not know that Agent Toungette was a law enforcement officer. At approximately 11:30 a.m. or 12:00 p.m. on July 24, 2003, Agent Toungette and another agent came to Pulley's residence. Pulley recalled, "They pulled in the yard. They said they were hurting and needed pain medication. I told them where I go, could get them a couple of pain pills." Pulley got into the agents' vehicle and directed them to the appellant's residence. The agents gave Pulley cash to purchase pills from the appellant.

Pulley knocked on the door of the appellant's residence, and the appellant answered the door. Pulley did not see anyone else at the residence. Pulley told the appellant that he wanted to buy two or three pain pills, and the appellant handed Pulley two or three Lortab pills and two or three Soma pills. Pulley believed that he gave the appellant four dollars per pill.

Pulley left the residence and returned to the agents' vehicle. The appellant came out of the mobile home to tell Pulley that he had left his beer in the residence. Pulley went back to the residence, got his beer, and went back to the vehicle. Pulley gave the pills to Agent Toungette.

Pulley stated that on July 24, 2003, he had no pain medication to sell Agent Toungette. Regardless, Pulley denied that he would sell his medication to Agent Toungette, asserting that he needed the medication for his own use. Pulley admitted that he had a history of alcohol related offenses, but he denied that he was an alcoholic.

Sergeant Gerald Wayne Baer with the Lawrenceburg Police Department testified that he interviewed Pulley during the first week of August 2003, after the purchase of pills from the appellant. Sergeant Baer maintained that Pulley's version of events at that interview was consistent with his trial testimony.

As defense proof, the appellant called his niece, Shownda Collins; Jerry Bruce Pigue; and James Earl Snodgrass, to testify that Pulley had a reputation in the community for dishonesty. The State, over the objection of the appellant, presented proof that Pigue had two former felony convictions for violations of the Habitual Motor Vehicle Offenders Act. Additionally, the State was allowed to impeach Snodgrass with a previous worthless check conviction.

In rebuttal, the State called Ric Wilson, the chief of police for the city of Waynesboro. Chief Wilson testified that Pulley was always truthful with him. Chief Wilson asserted, "Everything he's told me has always panned out exactly right."

Based upon the foregoing, the jury found the appellant guilty of possession of a Schedule III controlled substance with the intent to sell, and the trial court imposed a sentence of six years. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction and the trial court's rulings on impeachment evidence.

## II.  Analysis

### A.  Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

In order to sustain the appellant's conviction, the State was required to prove that the appellant knowingly possessed a controlled substance, namely Lortab, with the intent to sell or deliver. See Tenn. Code Ann. § 39-14-417(a)(4) (1997). Possession of contraband, such as drugs, can be either actual or constructive. State v. Transou, 928 S.W.2d 949, 955 (Tenn. Crim. App. 1996).

In the instant case, Agent Toungette approached Pulley to buy pain medication. Pulley had none, but he told Agent Toungette that he knew of someone who could supply Agent Toungette with pain medicine. Pulley directed Agent Toungette to the appellant's residence. Agent Toungette gave Pulley money with which to purchase pain medication from the appellant. Pulley testified that he went into the appellant's residence. The appellant was the only person in the residence. The appellant handed Pulley three Lortab pills and five Soma pills. Pulley paid the appellant four dollars per pill. Pulley returned to Agent Toungette's car and relinquished the pills. The appellant came out of the residence to inform Pulley that he had left his beer in the residence. The pills were sent to the TBI laboratory for testing. The three Lortab pills contained the Schedule III controlled substance dihydrocodinone. The Soma pills contained no controlled substance.

In sum, the proof at trial revealed that the appellant handed Pulley three Lortab pills, which contained the Schedule III controlled substance dihydrocodinone, in exchange for money. Thus, the proof supports the appellant's conviction for the possession of Lortab with the intent to sell. On appeal, the appellant argues that "the word of an individual [Pulley] who was himself indicted for selling drugs was too untrustworthy to sustain his conviction." Additionally, for the first time on appeal, the appellant contends that the proof demonstrated that he was, at most, guilty of casual exchange. However, the jury, as was its prerogative, chose to accredit the testimony of Pulley. We will not second-guess the factual determination of the jury. This issue is without merit.

## B. Impeachment

The appellant's remaining issues relate to the admissibility of impeachment evidence. First, the appellant argues that the trial court committed error by ruling that the State could introduce the appellant's prior convictions for introduction of contraband into a penal facility and escape to impeach the appellant's credibility. Second, the appellant alleges that the trial court committed error in allowing the State to impeach a defense witness with habitual motor vehicle offender convictions. We will address each of these issues in turn.

## 1. Impeachment of the Appellant

Prior to trial, the State filed a notice stating that if the appellant chose to testify at trial, the State would impeach him with four of his prior convictions. The notice listed the following convictions:

     (1) Introduction of contraband into a penal facility;

     (2) Hindering secured creditors;

     (3) Joyriding; and

     (4) Escape.

The appellant conceded that his convictions of hindering secured creditors and joyriding could be used to impeach his credibility at trial. However, he argued that his convictions of introduction of contraband into a penal facility and escape could not be used for impeachment, maintaining that neither conviction had any bearing on his credibility. Moreover, the appellant contended that his conviction of introduction of contraband into a penal facility was too similar to the offense for which he was being tried and would be unfairly prejudicial.

At the conclusion of the hearing to determine whether the four prior convictions could be introduced to impeach the appellant, the trial court ruled that all of the aforementioned convictions were admissible. However, the court ruled that the State could not refer to the type of contraband that the appellant was convicted of introducing into a penal facility. The appellant ultimately decided not to testify at trial.

Rule 609 of the Tennessee Rules of Evidence provides that the credibility of a witness may be attacked by evidence of a prior conviction if certain procedures are satisfied. A witness may be impeached by a prior conviction if "[t]he crime [is] punishable by death or imprisonment in excess of one year under the law under which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). If the witness to be impeached is the accused, "the court upon request must determine that the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." Tenn. R. Evid. 609(a)(3). Rule 609(b) also imposes a time limit on prior convictions, explaining that "[e]vidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed between the date of release from confinement and commencement of the action or prosecution; if the witness was not confined, the ten-year period is measured from the date of conviction rather than release." A trial court's ruling under Rule 609 will not be reversed on appeal absent an abuse of discretion. State v. Mixon, 983 S.W.2d 661, 675 (Tenn. 1999).

In the instant case, the appellant does not dispute that introduction of contraband into a penal institution and escape are offenses punishable by more than one year of confinement.[2] We note that this court has previously upheld the use of the offense of felony escape for impeachment purposes. See State v. Thompson, 36 S.W.3d 102, 111 (Tenn. Crim. App. 2000). Therefore, we conclude that the trial court did not err in ruling that the appellant's conviction for felony escape could be used for impeachment. Next, we will turn to the admissibility of the appellant's conviction for introduction of contraband into a penal facility.

Our review reveals that introduction of contraband into a penal facility is indeed punishable by more than one year in confinement. See Tenn. Code Ann. §§ 39-16-201(b); 40-35-111(b)(3)

---

[2] We note that the appellant's presentence report reflects that the appellant was previously convicted of *misdemeanor* escape and *attempted* introduction of contraband into a penal facility. However, the appellant does not argue on appeal or at trial that the State incorrectly listed the offenses as felony escape and introduction of contraband into a penal facility.

(2003).[3] Moreover, this offense was committed in 2001, rendering the conviction within the ten year time limit for admissibility.

Next, we must determine whether "the conviction's probative value on credibility outweighs its unfair prejudicial effect on the substantive issues." Tenn. R. Evid. 609(a)(3). In performing this balancing test, we must be mindful that

> [t]wo criteria are especially relevant in determining whether the probative value of a conviction on the issue of credibility outweighs its unfair prejudicial effect upon the substantive issues: (1) the impeaching conviction's relevance as to credibility; and (2) the impeaching conviction's similarity to the charged offense.

State v. Waller, 118 S.W.3d 368, 371 (Tenn. 2003). This court has previously stated, "The commission of any felony is considered to be generally probative of a defendant's criminal nature from which a jury could infer a propensity to falsify testimony." Walker, 29 S.W.3d 890 (citation omitted). However, our supreme court has "rejected a per se rule that permits impeachment by any and all felony convictions." Waller, 118 S.W.3d at 371. Therefore, "[t]o determine how probative a felony conviction is to the issue of credibility, the trial court must assess whether the felony offense involves dishonesty or false statement." Id.

We have searched the record in vain for the trial court's application of this balancing test. Regardless, we conclude that a conviction for introduction of contraband into a penal facility is not a crime of "dishonesty or false statement" as those terms are generally defined. See Waller, 118 S.W.3d at 372-73; see also State v. Wendell Ray Williams, No. M2001-02296-CCA-R3-CD, 2003 WL 1787283, at *7 (Tenn. Crim. App. at Nashville, Apr. 4, 2003). Further, we note that this offense is potentially similar to the crime for which the appellant was on trial; however, the record is unclear as to what "contraband" the appellant was convicted of introducing into a penal facility.[4] Thus, we

---

[3] Tennessee Code Annotated section 39-16-201(a) (2003) provides that it is illegal for a person to

> (1) Knowingly and with unlawful intent take, send or otherwise cause to be taken into any penal institution where prisoners are quartered or under custodial supervision any weapons, ammunition, explosives, intoxicants, legend drugs, or any controlled substances found in chapter 17, part 4 of this title.

> (2) Knowingly possess any of the materials prohibited in subdivision (a)(1) while present in any penal institution where prisoners are quartered or under custodial supervision without the express written consent of the chief administrator of the institution.

[4] We note that the trial court had instructed the State to refer to the general term "contraband" in an attempt to alleviate some of the potential prejudice. However, this practice is not necessarily encouraged. See State v. Galmore,

(continued...)

are unable to definitively determine the level of prejudice to the appellant. Nevertheless, we conclude that given the limited probative value and the potential prejudicial effect, the trial court erred in allowing this conviction to be used to impeach the appellant.

Finally, we must determine if the trial court's "error in this case affirmatively or more probably than not affected the judgment to [the appellant's] prejudice." See Waller, 118 S.W.3d at 374. To assess the harmfulness of the trial court's error, "we are obliged to consider the 'theory of the defense' in order to determine whether the erroneous impeachment would have had an impact on the result of the trial." State v. Thompson, 36 S.W.3d 102, 112 (Tenn. Crim. App. 2000). "We glean the defense theory from the arguments of counsel, the presentation of evidence in the [appellant's] case-in-chief, and, when appropriate, from the tenor of cross-examination of state witnesses." Id.

We note that the appellant's opening and closing statements are not included in the record for our review. See Tenn. R. App. P. 24(b). Thus, we are unable to use his arguments to the jury to glean his theory of defense. Regardless, the bulk of the appellant's cross-examination and his proof during his case-in-chief revolved around Pulley's credibility. On appeal, the appellant argues:

> The Trial Court's ruling on this issue effectively prevented the Appellant from testifying that he had given the pills to Pulley, a person that he had considered a friend. Nor did Appellant have a chance to rebut the contention that this was a designed, deliberate sale. Had Appellant testified, it is not far-fetched to believe that a jury may have convicted him of casual exchange (a misdemeanor) or may have acquitted him altogether.

From the foregoing, we conclude that the appellant's theory of defense was that Pulley was not credible and that the offense committed was simply a casual exchange. In other words, from the appellant's brief, we can surmise that had he testified, the appellant would not have denied the offense but rather would have explained his intent. As we stated earlier, the appellant did not include the opening or closing arguments with the record for our review. As such, we can only speculate whether he asserted during these arguments that the transaction was merely a casual exchange. Therefore, we are unable to fully assess the nature of the error. Moreover, we note that the appellant did not contest the admissibility of two other convictions for impeachment purposes. Accordingly, we are compelled to conclude that the error, from the record before us, was harmless. See Tenn. R. App. P. 24(b); State v. Oody, 823 S.W.2d 554, 559 (Tenn. Crim. App. 1991).

### 2. Impeachment of Pigue

---

[4](...continued)
994 S.W.2d 120, 122 (Tenn. 1999) (stating that "the proper application of the balancing test under Tenn. R. Evid. 609(a)(3) requires identification of the prior conviction").

At trial, Jerry Bruce Pigue testified on behalf of the appellant, stating that Pulley had a reputation for dishonesty. The State attempted to introduce evidence of Pigue's two former felony convictions for violation of the Habitual Motor Vehicle Offenders Act. The appellant objected, arguing that Pigue's convictions did not relate to his credibility and should therefore not be admissible for impeachment purposes. The trial court overruled the appellant's objection and allowed the State to proceed with its impeachment of Pigue.

If the witness being impeached is not the accused in a criminal prosecution, Rule 403, not Rule 609 applies. Tenn. R. Evid. 609, Advisory Commission Comments; see also Neil P. Cohen et al, Tennessee Law of Evidence, § 6.09[5][c] (LEXIS Publishing, 4th ed. 2000). In that instance, "a conviction would be admissible to impeach unless 'its probative value is substantially outweighed by the danger of unfair prejudice' or other criteria listed in that rule." Tenn. R. Evid. 609, Advisory Commission Comments (quoting Tenn. R. Evid. 403).

Initially, we note that the contested convictions are Class E felonies and thereby meet the threshold test for admissibility. See Tenn. Code Ann. § 55-10-616(b) (2003). This court has previously concluded that a conviction for violating an habitual motor vehicle offender order, while not overwhelming on the issue of credibility, "still reflects [an individual's] inability to conform his conduct to the requirements of the law." State v. Tony Allen Leonard, No. E1999-00971-CCA-R3-CD, 2000 WL 1772468, at *5 (Tenn. Crim. App. at Knoxville, Dec. 1, 2000); see also State v. David Scott Akers, No. W2003-00010-CCA-R3-CD, 2004 WL 1686604, at *3 (Tenn. Crim. App. at Jackson, July 6, 2004), perm. to appeal denied, (Tenn. 2004). We conclude that Pigue's two convictions for violating the Habitual Motor Vehicle Offenders Act have some probative value as to his truthfulness. Additionally, under these facts there is little risk of prejudice by the presentation of Pigue's prior convictions. Moreover, we note that the appellant had two other witnesses who testified as to Pulley's reputation for dishonesty. Accordingly, we conclude that the trial court did not abuse its discretion in allowing the State to impeach Pigue with these convictions.

### III.  Conclusion

Finding no reversible error, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE