IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2007

## STATE OF TENNESSEE v. ROBERT CHRISTOPHER MACLIN

**Appeal from the Circuit Court for Tipton County**
**No. 5311     Joseph H. Walker, III, Judge**

---

**No. W2006-02546-CCA-R3-CD  - Filed October 9, 2007**

---

The Defendant, Robert Christopher Maclin, was convicted of driving on a revoked license and possession of more than .5 grams of cocaine with intent to deliver.  He was sentenced as a Range II, multiple offender to thirteen years in the Department of Correction.  On appeal, he argues that the evidence was insufficient to support his cocaine conviction because he was not in possession of cocaine when he was arrested.  Following our review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

DAVID H. WELLES, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and ALAN E. GLENN, JJ., joined.

Periann S. Houghton, Assistant Public Defender, Covington, Tennessee, for the appellant, Robert Christopher Maclin.

Robert E. Cooper, Jr., Attorney General and Reporter; William A. Tillner, Assistant Attorney General; Michael Dunavant, District Attorney General; and James Walter Freeland, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At approximately 7:00 p.m. on September 7, 2005, the police stopped the Defendant for disregarding a stop sign while driving in Covington.  The Defendant was subsequently arrested and charged with driving on a revoked license and possession of cocaine.  He eventually pled guilty to the charge of driving on a revoked license.  Prior to his jury trial on the possession charge, he moved to have the cocaine recovered from his vehicle suppressed, arguing that it was the result of an unlawful search and seizure.  Following a hearing, the trial court denied his motion.

At the Defendant's trial, Officer Chris Payne of the Covington Police Department testified that he and his "canine partner," Rex, as well as another officer, Wes Henson, were all riding together in a marked police car. The officers were directly behind the Defendant's vehicle and observed him fail to stop at a stop sign. After Officer Payne activated the police car's blue lights, the Defendant, who had one passenger, pulled into a driveway approximately 100 feet "from the intersection where he disregarded the stop sign."

According to Officer Payne, he approached the passenger side of the vehicle, and Officer Henson approached the driver's side to speak with the Defendant, who was driving. At that time, Officer Henson observed "a small, white, rock-like substance that was in the driver's-door armrest, that was just laying there in the little groove where you—the hand groove," and directed Officer Payne's attention to it.

Following this testimony, the State questioned Officer Payne regarding his experience with narcotics detection and trafficking and tendered him as an expert witness "in the recognition and price of crack cocaine and how it's ingested." The trial court accepted Officer Payne as an expert in this field.

Officer Payne then testified that, after observing the object located on the driver's-side armrest, he walked his drug-detection canine around the perimeter of the Defendant's vehicle, and the dog indicated the presence of illegal narcotics by sitting and staring "at the seam of the driver's side door." The officers then searched the vehicle and discovered a larger bag containing "several rock-type substances" on the floorboard, "near the driver's seat of the front of the vehicle." Officer Payne field tested these items and concluded they contained cocaine.

Subsequent analysis by the Tennessee Bureau of Investigation revealed that these rock-like substances were, in fact, crack cocaine and that their total weight was 5.3 grams. Officer Payne testified that the street value of this amount of crack cocaine would be between $500 and $1,000, depending on the quantities in which it was sold. He also opined that someone would possess this amount of crack cocaine "for resale," rather than for personal use. No pipe or other mechanism for smoking crack cocaine was discovered in the vehicle.

Officer Henson testified that, when he first approached the driver's side of the Defendant's vehicle, he asked the Defendant for his driver's license and the Defendant responded that his license had been revoked. At that time, the Defendant had the driver's-side door open, and that is when Officer Henson "noticed a piece of crack cocaine laying in the handle of the door."

Marcus Cantrell Wakefield testified for the defense that he was the Defendant's cousin and that he was riding with him in the passenger seat the day he was arrested. According to Wakefield, he and the Defendant had been fishing that morning. Afterwards, they went to the Defendant's house and drank "a couple of beers" and then "somehow ended up getting [the Defendant's father's] van." Next, they were driving to Wakefield's house, and the Defendant ran a stop sign even though

the police were "right there." Wakefield gave the following account of what transpired after the Defendant ran the stop sign:

> So we pulled into my yard. So he got out of the car, so I got out, going to walk to the house [sic]. So then the officers, they ran around there, they put the guns on us, told us to stop, get back in the car. So we got back in the car. Then they came, got us out the car [sic] after they put us back in the car. And they put us in handcuffs then, took us around the car. And then they like [sic] something was in the door. I don't know what was in the door. But they was like they [sic] found something. Then they searched the vehicle. And then backup came. They searched it again. That's when they so-called found something under the car.

Wakefield also said that he did not know where the crack cocaine came from, that the Defendant did not ever put anything under the seat of the van, and that he would not have gotten into the vehicle had he known it was in there. He explained that they were driving the Defendant's father's van because the Defendant's car had broken down. Asked if the Defendant's father smoked crack cocaine, Wakefield said, "[n]ot that I know of."

Eric Harris testified that he is also the Defendant's cousin and is Wakefield's brother. He was "standing in the yard" when the Defendant was arrested. Harris testified regarding the search of the vehicle:

> To me it was a bunch of bull, you know, because it kind of made me upset because the way it was a lot of searching because [sic] about two officers searched the van, but they didn't find nothing. And all of a sudden they come up with something, and I remember they said they found it underneath, like when you getting [sic] out of the van.

The thirty-year-old Defendant testified that he and Wakefield had gone fishing the morning he was arrested and that afterwards they went to his house where they consumed "a couple of beers." Then, they borrowed his father's van to go over to Wakefield's house where they planned "just to sit around" and talk. He said that, after he pulled into Wakefield's driveway, the police approached them and "told us to get back in the car" before they searched it.

The Defendant testified that he knew the "rock" was on the armrest of the vehicle, that he knew what it was, but that he never saw the bag of crack cocaine on the floorboard. On cross-examination, he testified that the crack cocaine did not belong to his father, Wakefield or Harris. He admitted that he drove the car that day even though he knew his driver's license had been revoked and there was crack cocaine on the armrest, but he maintained that it did not belong to him.

On redirect examination, Officer Payne testified that after discovering the crack cocaine in the Defendant's vehicle, he showed it to the Defendant who said that "he only smoked, he didn't sell; he only smoked crack cocaine." Officer Henson was also called for redirect, and he testified that on the day of the arrest, the Defendant "took ownership" of the single "rock" of crack cocaine found

on the armrest but "denied ownership of the bag of crack cocaine. His statement was, 'I smoke crack. I don't sell it.'"

After deliberation, the jury convicted the Defendant of possession of cocaine, in the amount of .5 grams or more, with the intent to deliver. The Defendant appealed.

## ANALYSIS

The Defendant argues on appeal that the evidence was insufficient to support his conviction because the proof presented at his trial did not establish that he was in actual or constructive possession of the cocaine. In order to secure the Defendant's conviction, the State had to prove that he knowingly possessed .5 grams or more of a substance containing cocaine with the intent to deliver. See Tenn. Code Ann. § 39-17-417.

Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557–58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

We disagree with the Defendant's contention that the proof was legally insufficient to establish that he had constructive possession of the crack cocaine recovered from the vehicle he was driving.

The statute prohibiting possession of illegal drugs under which the Defendant was convicted, Tennessee Code Annotated section 39-17-417, is not confined "to proof of actual possession, and

evidence of either constructive possession or other control over the substance is sufficient to establish this element" of the offense. State v. Ross, 49 S.W.3d 833, 845 (Tenn. 2001) (citing State v. Brown, 823 S.W.2d 576 (Tenn. Crim. App. 1991)). This Court has previously explained the nature of constructive possession:

> Before a person can be found to constructively possess a drug, it must appear that the person has the power and intention at a given time to exercise dominion and control over . . . [the drugs] either directly or through others. In other words, constructive possession is the ability to reduce an object to actual possession. The mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs.

State v. Transou, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (quotations and citations omitted). Additionally, "this Court has held 'that a defendant's possession of contraband may be inferred from a defendant's ownership or control over a vehicle in which the contraband is secreted.'" State v. Timothy Tyrone Sanders, No. M2001-02128-CCA-R3-CD, 2002 WL 1465925, at *4 (Tenn. Crim. App., Nashville, July 5, 2002) (quoting State v. James A. Jackson, No. M1998-00035-CCA-R3-CD, 2000 WL 549295, at *11 (Tenn. Crim. App., Nashville, May 5, 2000)); see also State v. Brown, 915 S.W.2d 3, 7–8 (Tenn. Crim. App. 1995).

In this case, according to the testimony of Officer Henson, the Defendant admitted that the single "rock" of crack cocaine recovered from the armrest of the driver's-side door was his. The remaining bag of crack cocaine was discovered in the driver's-side floorboard, and it is undisputed that the Defendant was in control of the vehicle when the police stopped him. The jury did not accredit defense testimony that the bag of crack cocaine was discovered underneath the vehicle, and we will not disturb this determination on appeal. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659.

We conclude that this evidence is sufficient to establish that the Defendant constructively possessed the contraband at issue because he had the ready ability to reduce the crack cocaine to actual possession. See Transou, 928 S.W.2d at 956. He needed only to reach into the floorboard of the car he was driving and take the bag of crack cocaine into his hand in order to be in actual possession of it.

The Defendant also asserts that the evidence was insufficient to establish that he had the intent to deliver the crack cocaine. Again, we disagree. Officer Payne testified as an expert that the crack cocaine was worth between $500 and $1,000 and that, in his opinion, the amount of crack cocaine found in the vehicle would be possessed for resale rather than for personal consumption. The jury accredited this testimony. Moreover, no pipe or other means of smoking the drug were recovered. We find that this evidence was sufficient to establish that the Defendant intended to deliver the crack cocaine for resale. See Sanders, 2002 WL 1465925, at *4 (holding that possession

of crack cocaine worth at least $350 dollars, in addition to other evidence, including expert opinion and the absence of a "crack pipe," was sufficient to establish the intent to sell).

## CONCLUSION

Based on the foregoing authorities and reasoning, we conclude that the evidence was sufficient to support the Defendant's conviction for possession of crack cocaine with the intent to deliver and affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE