# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs November 18, 2009

## STATE OF TENNESSEE v. BRANDON D. THOMAS

**Direct Appeal from the Circuit Court for Warren County**
**No. M-9977      Larry B. Stanley, Jr., Judge**

___

**No. M2009-00464-CCA-R3-CD - Filed November 29, 2010**

___

Appellant, Brandon D. Thomas, appeals his conviction for simple possession of marijuana after a jury trial in Warren County. Appellant received a sentence of eleven months and twenty-nine days for the conviction. On appeal, the sufficiency of the evidence is challenged. After a thorough review of the record, we determine that the evidence is sufficient to support the conviction. Accordingly, the judgment of the trial court is affirmed.

**Tenn. R. App. P. Appeal as of Right; Judgment of the Circuit Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the Court, in which JERRY L. SMITH and CAMILLE R. MCMULLEN, JJ., joined.

Dan T. Bryant, District Public Defender; and Trenena G. Wilcher, Assistant District Public Defender, McMinnville, Tennessee, for the appellant, Brandon D. Thomas.

Robert E. Cooper, Jr., Attorney General and Reporter; Cameron L. Hyder, Assistant Attorney General; Lisa Zavogiannis, District Attorney General; and Thomas Miner, Assistant District Attorney General, for the appellee, the State of Tennessee.

## OPINION

### I. Background

Appellant and Jamie Ivy were indicted in January of 2005 by the Warren County Grand Jury for possession of marijuana with the intent to sell and possession of drug paraphernalia. Appellant filed a motion to dismiss the indictment, in which he argued that the statute referenced in the indictment actually referred to a felony, rather than a misdemeanor, as purportedly alleged. Further, Appellant argued that the facts, as alleged by

the State, supported an indictment for simple possession, a misdemeanor. Prior to trial, the trial court issued an order "regarding indicted offenses." In the order, the trial court noted that the parties submitted a document in which the parties agreed that "the evidence warranted the case going forward as a Simple Possession of Marijuana offense under T.C.A. § 39-17-418, a [C]lass A misdemeanor." The parties agreed that the document could be "tendered to the Jury in lieu of the original indictment . . . without objection from either party."

Prior to trial, Appellant filed a motion in limine seeking to prohibit the State from "making any reference to the cash found at Jaime [sic] Ivy's residence." Appellant argued that the "discovery of the cash is no longer relevant" because the State is seeking to convict Appellant of simple possession rather than possession with intent to sell. Further, Appellant argued that the introduction of the discovery of the cash would "only serve to confuse the jury, is no longer probative of the crime charged, and would be purely prejudicial . . . ."

The trial court ruled on the motion in limine prior to the commencement of the trial. The trial court determined that "to permit the [State] to offer testimony that [Appellant] was found to be in possession of over $3,000.00 in cash at the time of his arrest would be more prejudicial to [Appellant] than probative of the issue of his guilt ; . . . ." The trial court held that the State could "offer testimony that the Marijuana was found in the presence of cash and that [Appellant], while denying possession of the Marijuana, did claim possession of the cash." Additionally, the State was precluded from offering testimony about the amount of the cash or introducing photographs of the cash.

After hearing the evidence at trial, the jury found Appellant not guilty of possession of drug paraphernalia but guilty of simple possession of marijuana. As a result, the trial court sentenced Appellant to eleven months and twenty-nine days, ordering Appellant to serve seven months in the county jail prior to release on probation. The sentence was ordered to run consecutively to "[a]ny sentence(s) [Appellant] is currently serving including but not limited to M-9973 and F-10137."

Appellant filed a timely motion for new trial in which he alleged that the evidence was insufficient to support the guilty verdict. The trial court denied the motion for new trial. Appellant filed a timely notice of appeal.

Appellant filed a "Notice of Filing of Statement of the Evidence" in accordance with Tennessee Rule of Appellate Procedure 24(c). The statement of the evidence includes the following summary of the trial and the testimony at trial:

[After preliminary matters such as voir dire, a hearing on the motion in limine, and opening statements, the State] called [its] first witness, Detective Barry Powers.

## TESTIMONY OF BARRY POWERS

Detective Powers testified that he has been a detective with the McMinnville Police Department for 12 ½ years, and has a total of 30 years in law enforcement. Detective Powers went on to testify that he knew Brandon Thomas and knew he was living at Woods Edge apartments because he had been there on a prior occasion and had seen [Appellant] sitting in an outdoor stairwell.

On August 26, 2006[,] Detective Powers, Detective Mike Vann, and Detective Tony Jenkins went to Woods Edge apartments at 8:30 a.m. to execute a search warrant at the home of Jaime Ivy. Detective Powers stated that Ms. Ivy opened the door and they entered the apartment. [Appellant] was lying on the couch, underneath a blanket, and appeared to have been asleep. Detective Powers further testified that [Appellant] remained on the couch at gunpoint while the apartment was cleared by other officers. [Appellant] was then handcuffed and removed from the apartment. When [Appellant] got off the couch, Detective Powers saw a baggie of marijuana and cash in the couch where the cushions meet the back of the couch. [Appellant] was then searched and additional cash was found on his person. Detective Powers stated that [Appellant] claimed ownership of the cash on his person and in the couch, but said that the marijuana wasn't his. Detective Powers testified that Jaime's daughter, Amber Ivy was also at the apartment at the time of the search, but she was not charged.

Detective Powers went on to testify that Detective Jenkins took possession of the marijuana and bagged it as evidence. The apartment was then searched and scales were found in a drawer by the kitchen sink. A white, powdery residue was present on the scales. Detective Powers also stated that [Appellant's] clothes were found in the apartment.

The State called as its next witness Detective Tony Jenkins

## TESTIMONY OF TONY JENKINS

Detective Tony Jenkins stated that he has been with the McMinnville Police Department since November 1999, and has served as a drug investigator for 7 ½ years.

Detective Jenkins testified that he had accompanied Detective Powers and Vann to execute the search warrant at the residence of Jaime Ivy. He stated that, upon entering the apartment, he saw [Appellant] on the couch under a blanket, and it looked like [Appellant's] hands were moving around under the blanket. Detective Jenkins admitted that he had his gun drawn as he entered the apartment, with it trained on [Appellant], and yelled at him to show his hands. The detective stated that it took [Appellant] 10-15 seconds for him to raise his hands. Detective Jenkins stated that [Appellant] was handcuffed and taken outside and downstairs to wait while the officers executed their search.

Detective Jenkins went on to testify that he searched [Appellant] and found cash in his pocket, and that [Appellant] claimed the cash as his. The detective stated that Detective Powers saw the marijuana and cash in the couch, and that these items were together in the seam of the couch. Detective Jenkins identified the bag of marijuana produced by [counsel] as the marijuana found in Jamie Ivy's couch. The bag was marked and entered as Exhibit 1 to Detective Jenkins' testimony. He went on to testify that upon further search of the apartment, scales were located in a kitchen drawer. The scales were produced and entered as Exhibit 2 to Detective Jenkins' testimony. Detective Jenkins verified that Amber Ivy was also in the apartment and that she was not charged.

Detective Jenkins testified on cross-examination regarding the normal procedure of executing a search warrant and logging the items found during the search. He acknowledged that he was responsible for logging the items found during this particular search, and admitted that the bag of marijuana was not logged as one of the items collected during the search, and that no marijuana was listed on the evidence log. He also admitted that he didn't know why the marijuana was not listed on the evidence log.

The State called as its next witness TBI agent John Scott, Jr.

-4-

## TESTIMONY OF JOHN SCOTT, JR.

Agent Scott testified that he has been employed with the TBI for 5 ½ years and had analyzed the marijuana submitted to him as evidence collected in this case. Agent Scott determined that the plant substance submitted was marijuana, and that its weight was 13.0 grams. Agent Scott's report was entered as Exhibit 3.

The jury was excused at this point in the trial and Judge . . . inquired as to whether [Appellant] would testify. After conducting a *Momon* hearing, [Appellant] expressed his desire to testify, and he was called as the defense's only witness.

## TESTIMONY OF [APPELLANT]

[Appellant] testified that on the morning of August 26, 2004, he was sleeping on the couch at the residence of Jaime Ivy when he was awakened by officers rushing into the apartment with guns drawn. [Appellant] testified that he did not immediately raise his hands because he was confused, having just been abruptly awakened. [Appellant] maintained that he was not living at the residence, but had stayed there off and on during the past several weeks. [Appellant] again denied that the marijuana was his, stating that he was unaware of its presence in the couch. He did, however, testify that the cash found in the cushion was his.

[Appellant] then proceeded to testify in narrative form about the illegality of this search and past searches he had been a part of, and about the police department's dislike for him, and about the officers' desire to set him up.

Following [Appellant's] testimony, each of the attorneys made their closing arguments . . . .

Prior to trial, the parties entered a "stipulation" stating that Detective Jenkins seized a sandwich bag of green leafy substance from the Ivy apartment and immediately sealed it and placed it in a manila envelope that was sealed as evidence and ultimately hand-carried to the TBI lab in Nashville.

## II. Analysis

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced on appeal with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.*; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The criminal offense of simple possession of a controlled substance is codified at Tennessee Code Annotated section 39-17-418. The statute states in pertinent part that "[i]t is an offense for a person to knowingly possess or casually exchange a controlled substance, unless the substance was obtained directly from, or pursuant to, a valid prescription or order of a practitioner while acting in the course of a professional practice." T.C.A. § 39-17-418(a). A violation of this subsection is a "Class A misdemeanor" unless it is described under subsections (d) and (e). T.C.A. § 39-17-418(c). "[A] person . . . acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." T.C.A. § 39-11-302(b).

"Possession" may be actual or constructive, and may be proven by circumstantial evidence. *See State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001); *State v. Bigsby*, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000). Constructive possession requires proof that a person had the power and intention at a given time to exercise dominion and control over the drugs either directly or through others. *Shaw*, 37 S.W.3d at 903 (quoting *State v. Patterson*, 966 S.W.2d 435, 444 (Tenn. Crim. App. 1997)). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Ross*, 49 S.W.3d 833, 845-46 (Tenn. 2001) (citations omitted). Furthermore, while mere presence at a place where controlled substances are found does not support an inference of possession, a person in possession of the premises where controlled substances are found may be presumed to also

possess the controlled substances found. *State v. Transou*, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); *see also Armstrong v. State*, 548 S.W.2d 334 (Tenn. Crim. App. 1976).

Appellant argues that not only was the evidence insufficient to show that Appellant possessed the marijuana but also that there was no marijuana listed on the evidence log. Viewing the evidence in a light most favorable to the State, it appears that Appellant was living or at least staying long-term in an apartment that was searched by police. When the police executed their warrant, Appellant was found lying on a couch, asleep. When instructed to show his hands, Appellant took several seconds to remove his hands, during which time he was seen moving his hands around under the blanket. When Appellant got off of the couch, the officers discovered marijuana and cash "together in the seam" of the couch where the "cushions meet the back of the couch." Additionally, cash was found on Appellant's person. Appellant claimed ownership of the cash found with the marijuana in the couch, but not the 13 grams of marijuana. We have previously stated that determining the credibility of witnesses is left to the sole province of the jury and we will not overturn those determinations. *Bland*, 958 S.W.2d at 659. Viewing the evidence in a light most favorable to the State, we conclude that the evidence was sufficient to establish that Appellant was guilty of simple possession of marijuana. Moreover, Appellant entered into a stipulation prior to trial that Detective Jenkins seized the marijuana from the scene and properly processed it as evidence. Appellant is not entitled to relief on this issue.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE

-7-